IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DENORRIS WRIGHT

      Plaintiff,

v.                                  CASE NO. 1:20-cv-96-AW-GRJ

OFFICER LUKE S. GRANT,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant's Motion for Summary

Judgment.  ECF No. 26.  Plaintiff, proceeding *pro se*, filed a response in

opposition.  ECF No. 37.  The motion, therefore, is ripe for consideration.

For the reasons discussed below, it is respectfully **RECOMMENDED** that

the motion for summary judgment should be **DENIED**.

### I. BACKGROUND

### A.    Plaintiff's Sworn Statements[1]

---

[1] Plaintiff signed under penalty of perjury the First Amended Complaint, ECF No. 12, and, therefore, it is treated by the Court like a sworn affidavit in the summary judgment record. *See Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (treating a plaintiff's "statements in his verified complaint" as testimony); *Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a separate affidavit is not necessary.").  Plaintiff also provided sworn testimony in a discovery deposition conducted by Defendant's counsel.  ECF No. 26-4.

Plaintiff is a prisoner in the custody of the Florida Department of Corrections.  On October 19, 2019, at Lancaster Correctional Institution in Gilchrist County, Plaintiff was scheduled to work in food service for the "p.m. shift" but elected not to report because he "came down with a cold." ECF No. 12 at 5; ECF No. 26-4 at 13–14. At about 1:00 p.m., Officer Laplant called for Plaintiff to report to work.  ECF No. 12 at 5; ECF No. 26-4 at 14.  Plaintiff told his dormitory officer that he was not feeling well, and the officer encouraged him to explain his condition to Officer Laplant.  ECF No. 26-4 at 15.

Plaintiff first attempted to "declare a psychological emergency" with his dormitory officer so that he would not be issued a disciplinary report for disobeying orders or refusing to work.  *Id.*  The officer "got mad" and "yelled" at Plaintiff that he needed to speak with Officer Laplant or he would be sent to "the box."  *Id.*  So Plaintiff began walking to the food service area when he saw Officer Laplant standing outside a gate in front of the entrance to the cafeteria.  *Id.* at 15–16.

Plaintiff advised Officer Laplant that he was sick and asked for the day off, but Officer Laplant directed him to get to work.  *Id.* at 16.  Plaintiff, again, declared a psychological emergency and stated to Officer Laplant, "I

want to kill myself." *Id.* at 16.  Officer Laplant reported Plaintiff's complaint over the radio. *Id.* at 17.

Defendant and "at least three or four other officers and one captain" were dispatched to the gate where Plaintiff was standing. *Id.*  Plaintiff, for a third time, declared a psychological emergency and told the corrections officers that he wanted to kill himself. *Id.*  Defendant "laughed it off." *Id.*  Defendant then noticed "something" broken on the gate and accused Plaintiff of tampering with it. *Id.* at 18.  Plaintiff denied the allegation, but when Plaintiff "turned around to look to see what [Defendant] was taking about" Defendant sprayed him in the face and eyes with a chemical agent. *Id.* at 18, 20.  As Defendant sprayed Plaintiff, placed him in handcuffs, and restrained him against a nearby wall, the captain directed other inmates to go inside. *Id.* at 20–21.

Defendant continued to "spray" the chemical agent on Plaintiff after he restrained Plaintiff and held him against the wall with another unidentified officer. *Id.* at 21–22.  The unidentified officer told Plaintiff that if he told the prison nurse what happened he would "beat [his] ass again," and he proceeded to punch Plaintiff. *Id.* at 22.  Defendant also joined in punching Plaintiff.  ECF No. 12 at 6.  Plaintiff slid down the wall, fell to his knees, and begged Defendant and the unidentified officers to stop because

3

he was choking on the spray and could "barely breath."  ECF No. 26-4 at

23–24.  When Plaintiff gasped for air, "the spraying and punching stopped."

*Id.* at 24.

Defendant and the other corrections officers escorted Plaintiff to the

infirmary for a medical visit.  *Id.* at 26.  Although one of the unidentified

officers told Plaintiff to "keep [his] mouth closed," he immediately started

crying and telling the nurse that they "beat [him]."  *Id.*  Plaintiff reported

neck, back, and face injuries as well as vision problems to the nurse.  *Id.*

Following this encounter, Plaintiff had a swollen eye, his wrists hurt for

three months, and he continues to have pains in his neck and back from

being punched by Defendant and the unidentified officer.  *Id.* at 27–28.

The pain from Defendant's use of the chemical agent subsided "the same

day," after the unidentified officers placed him in a cold shower to rinse off.

*Id.* at 29.

## B.    Department of Corrections Records

Defendant submitted a sworn DOC report, titled "Report of Force

Used" and dated October 19, 2019.  ECF No. 26-3 at 1–2.  Defendant

stated in the report that he was dispatched to the food service area in

response to Officer Laplant's call about Plaintiff's psychological emergency.

*Id.* at 1.  Defendant also said he observed Plaintiff attempting to remove a

4

fence tie from the nearby fence, gave him "numerous orders to cease his actions" to no avail, and administered a "continuous stream" of Oleoresin Capsicum (pepper spray) to overcome Plaintiff's "physical resistance" until he was handcuffed. *Id.*[2]

Officer Laplant submitted an "Incident Report" on October 19, 2019, corroborating Defendant's explanation and Plaintiff's actions. *Id.* at 9. Officer Laplant stated she observed Plaintiff attempting to remove a fence tie from the fence outside the food service area and Defendant ordered Plaintiff "several times to cease his actions and submit to hand restraints[] to no avail." *Id.*

The summary judgment record also includes DOC medical records. Nurse C. Chauncey did not note any injuries to Plaintiff during a post-incident physical examination. ECF No. 26-6 at 3–4. And records titled "Mental Health Nursing Evaluation" state that Plaintiff was admitted to the infirmary for "risk of self harm" and follow-up observation for at least one week after the encounter in issue. *Id.* at 8–52.

---

[2] Defendant filed a sworn declaration from DOC Research and Training Specialist Christopher Jordan, who was not present during the October 19 incident. ECF No. 26-5. Jordan estimates that Defendant discharged about 43 grams of pepper spray from a canister built to hold 80 grams. *Id.* at 1.

Plaintiff was found guilty of two disciplinary violations stemming from the October 19, 2019, incident.  ECF Nos. 26-1, 26-2.  The first disciplinary repot (Log No. 281-190725) is for a charge of disobeying a verbal order by a staff member or authorized person.  ECF No. 26-1 at 1.  Plaintiff lost 20 days of gain time and was sentenced to 16 days of disciplinary confinement.  *Id.* at 1–2.  The second disciplinary report (Log No. 281-190726) is for a charge of destruction of state property.  ECF No. 26-2 at 1.  Plaintiff lost 10 days of gain time and was sentenced to 30 days in disciplinary confinement.  *Id.* at 1–2.

### C.    The First Amended Complaint and Defendant's Motion for Summary Judgment

In his First Amended Complaint, Plaintiff asserts that Defendant is liable for inflicting excessive force, in violation of the Eighth Amendment to the United States Constitution, based on Defendant's use of physical force and chemical agents against him on October 19, 2019.  ECF No. 12 at 11.[3] As to relief, Plaintiff is seeking $40,000 in compensatory damages and $50,000 in punitive damages.

---

[3] Plaintiff also alleges that an "unidentified captain" should be liable for failing to stop his "beating" and that there were "threats of retaliatory disciplinary actions."  ECF No. 12 at 11.  Plaintiff has neither named that unidentified captain nor served him or her with the First Amended Complaint.  Defendant does not address these claims in the instant motion.

In the instant motion, Defendant offers three independent reasons why he is entitled to full or partial summary judgment on Plaintiff's constitutional claim.  ECF No. 26 at 9–21.  For starters, Defendant contends that the Court lacks subject-matter jurisdiction over the excessive force claim because any imposition of liability would "necessarily undermine" the prison's finding as to Plaintiff's disciplinary violations (for disobeying a verbal order and destroying state property) stemming from the October 19 encounter.  *Id.* at 9 (citing *Edwards v. Balisok*, 520 U.S. 641 (1997); *Heck v. Humphrey*, 512 U.S. 477 (1994)).  Defendant then argues that if the so-called *Heck* bar does not apply, Plaintiff cannot demonstrate Defendant's use of force (both physical and chemical) was unconstitutionally excessive.  *Id.* at 14–16.  Finally, Defendant claims that § 1997e(e) of the Prison Litigation Reform Act forecloses an award of compensatory or punitive damages[4] on Plaintiff's excessive force claim because Plaintiff's physical injuries were only de minimis.  ECF No. 26 at 16–21.

---

[4] After Defendant filed his motion for summary judgment, the Eleventh Circuit, sitting *en banc*, held that § 1997e(e) does not preclude the recovery of punitive damages by a prisoner in the absence of physical injury.  *Hoever v. Marks*, 993 F.3d 1353, 1357 (11th Cir. 2021) (en banc).  The Court still must address generally Defendant's argument concerning the § 1997e(e) physical injury requirement because, according to Defendant, it bars an award of compensatory damages to Plaintiff.

## II.  LEGAL STANDARD

The entry of summary judgment is appropriate when the Court is satisfied "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a). In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party."  *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).  "The nonmovant need not be given the benefit of every inference but only of every reasonable inference."  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the movant bears the initial burden of establishing the nonexistence of a triable issue of fact.  This, however, does not require the movant to disprove matters on which the non-moving party bears the burden of proof at trial.  *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1396 (11th Cir. 1994).  "[T]he moving party simply may show—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *United States v. Four Parcels of Real Property in*

8

*Green and Tuscaloosa Counties in the State of Alabama*, 941 F.2d 1428, 1438 (11th Cir. 1991) (alterations adopted).

If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).

### III.  DISCUSSION

Defendant's arguments for summary judgment must fail. As explained below, the Court concludes that the *Heck* bar does not apply to Plaintiff's excessive force claim, that there is a genuine issue of material fact as to whether Defendant's use of force was excessive, and that a

reasonable jury could find that Plaintiff suffered more than a de minimis physical injury.

**A.    The *Heck* bar does not apply to Plaintiff's excessive force claim.**

Defendant contends this Court lacks subject-matter jurisdiction over Plaintiff's excessive force claim because if the operative facts of the First Amended Complaint were proven true then they would necessarily undermine and contradict the prison disciplinary records finding Plaintiff guilty of disobeying a verbal order and destroying state property on October 19, 2019.  ECF No. 26 at 9–14.[5]

The Supreme Court held in *Heck v. Humphrey* that state prisoners are barred from pursuing § 1983 actions that, if successful, would necessarily imply the invalidity of a plaintiff's conviction.  512 U.S. 477, 485 (1994).  In considering whether a § 1983 claim is *Heck*-barred, the Court must determine whether a plaintiff's factual allegations, if proven, would necessarily undermine the validity of the plaintiff's conviction.  *Edwards v. Balisok*, 520 U.S. 642, 646–48 (1997).  Relevant here, a prisoner's § 1983

---

[5] It bears mentioning that it is unlikely the *Heck* bar implicates the Court's subject-matter jurisdiction.  *See Teagan v. City of McDonough*, 949 F.3d 670, 678 (11th Cir. 2020) ("[T]he Supreme Court's own language suggests that *Heck* deprives the plaintiff of a cause of action—not that it deprives a court of jurisdiction."); *Topa v. Melendez*, 739 F. App'x 516, 518 n.1 (11th Cir. 2018) (describing the "minority view that *Heck* is a jurisdictional rule" and recognizing that "no published appellate court decision" endorsed this view).  The Court need not resolve this issue if it concludes the *Heck* bar does not apply.

claim is also *Heck*-barred where the action, if successful, would necessarily imply the invalidity of a prison disciplinary record.  *Id.* at 648.

Conversely, "as long as it is possible that a § 1983 suit would not negate the underlying [punishment], then the suit is not *Heck*-barred."  *Dyer v. Lee*, 488 F.3d 876, 880 (11th Cir. 2007).  That is, a successful § 1983 suit and the underlying conviction or discipline must be logically contradictory.  *Id.* at 884.  "When a plaintiff alleges a fact that, if true, would conflict with the earlier punishment, but that fact is not necessary to the success of his § 1983 suit, the *Heck* bar does not apply."  *Dixon v. Hodges*, 887 F.3d 1235, 1239 (11th Cir. 2018).

Here, it is obvious that *Heck* does not bar Plaintiff's excessive force claim.  The disciplinary reports against Plaintiff were based on the same factual statement by Defendant:

> On October 19, 2019, I was assigned as the internal security officer.  At approximately 1:51 p.m., I responded to an incident in food service.  As I arrived at food service[,] I observed inmate Wright, Denorris DC#P27598 attempting to remove the fence tie off the fence outside of food service.  I then gave inmate Wright numerous orders to cease his actions.  Inmate Wright continued attempting to remove the weapon from the fence.  Inmate Wright's action resulted in a chemical use of force.  Inmate Wright was placed in administrative confinement pending disposition of this report.

ECF No. 26-1 at 1; *see also* ECF No. 26-2 at 1.  The disciplinary reports further state that Plaintiff was found guilty based on Defendant's statements.  ECF No. 26-1 at 2; ECF No. 26-2 at 1.

The success of Plaintiff's excessive force claim, however, does not depend on whether the statements in Plaintiff's disciplinary reports are true. Indeed, the disciplinary punishment establishes those statements as facts for Defendant's present argument.  A reasonable jury could conclude, based on those same facts, that Defendant should be liable for using an unreasonable amount of force on Plaintiff relative to Plaintiff's failure to obey a command or his tampering with a fence tie (which Defendant deemed a potential weapon).  *See Sconiers v. Lockhart*, 946 F.3d 1256, 1268–70 (11th Cir. 2020) (*Heck* bar did not apply to an inmate's excessive force claims where inmate pleaded guilty to resisting an officer because the officer could have used excessive force after inmate became compliant); *Hunter v. City of Leeds*, 941 F.3d 1265, 1276 n.12 (11th Cir. 2019) ("Because it is logically possible that Hunter pointed his gun at Kirk, and that Kirk nonetheless used excessive force in response, the *Heck* bar does not apply."); *Dixon*, 887 F.3d at 1240 ("It is logically possible both that

Dixon lunged at Pollock and that Pollock used excessive force against him.").[6]

At bottom, even if the combination of the *Heck* bar and Plaintiff's disciplinary reports precludes Plaintiff from challenging the fact that *some* use of force was necessary to subdue him, it does not forbid him from raising the present claim that Defendant's *actual* use of force—which includes punching by Defendant that is not mentioned in the disciplinary reports—was excessive. *See* ECF No. 26-4 at 20–24 (Plaintiff's deposition testimony that Defendant continued to punch him and use pepper spray after he was handcuffed and placed against a wall). Because there is no theoretical possibility that Plaintiff's successful prosecution of his excessive force claim would invalidate or necessarily undermine the prison disciplinary reports stemming from the October 19, 2019, encounter,

---

[6] *See also Roca-Moreno v. Rossiter*, No. 5:18-cv-231-BJD-PRL, 2021 WL 1854669, at *6 (M.D. Fla. May 10, 2021) ("It is possible that Plaintiff disobeyed Defendant Moore's order and that Defendants Moore, Crawford, or Berg, or all three, used more force than necessary to gain Plaintiff's compliance."); *Walker v. Herron*, No. 1:17-cv-79-MW-GRJ, 2019 WL 1411528, at *5 (N.D. Fla. Jan. 29, 2019), *report and recommendation adopted*, 2019 WL 1409850, at *1 (Mar. 28, 2019) ("Even though Plaintiff was punished for refusing Herron's orders, behaving disorderly, assuming an aggressive stance, and making a threatening remark to Herron and Davenport, these factual findings are not determinative of whether Defendants used excessive force against Plaintiff in response to Plaintiff's conduct."); *Beecher v. Jones*, No. 3:08-cv-416-MCR-EMT, 2010 WL 5058555, at *5 (N.D. Fla. Oct. 29, 2010), *report and recommendation adopted*, 2010 WL 5055991, at *1 (Dec. 6, 2010) ("Plaintiff could have committed all of the acts set forth in the DR and hearing team decision, yet the manner in which the chemical agent was applied, the duration of its application, etc., could still constitute the use of excessive force.").

*Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1193 (11th Cir. 2020), the *Heck* bar does not apply.

### B. There is a genuine issue of material fact as to whether the Defendant's use of force was excessive.

Defendant argues in the alternative that there is a dearth of evidence demonstrating his use of force (both physical and chemical) was unconstitutionally excessive under the circumstances.  ECF No. 26 at 14–16.  The summary judgment record shows otherwise.

The Eighth Amendment's prohibition of cruel and unusual punishment includes a state actor's use of excessive force against a prisoner.  *Hudson v. McMillian*, 503 U.S. 1, 4 (1992).  "In Eighth Amendment excessive force cases, the 'core judicial inquiry' is 'not whether a certain quantum of injury was sustained, but rather where force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Bowden v. Stokely*, 576 F. App'x 951, 953 (11th Cir. 2014) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)).  The Court considers five factors in determining whether force was used sadistically and maliciously:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between the need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

14

*Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations and citations omitted).

"When we consider whether the jailer's use of force was excessive, we must 'give a wide range of deference to prison officials acting to preserve discipline and security.'" *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) (quoting *Bennett v. Parker*, 989 F.2d 1530, 1533 (11th Cir. 1990)). "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett*, 898 F.2d at 1533. "Eighth Amendment claims based on de minimis uses of physical force by prison guards are not cognizable unless they involve 'force that is repugnant to the conscience of mankind.'" *Johnson v. Moody*, 206 F. App'x 880, 884-85 (11th Cir. 2006) (quoting *Hudson*, 503 U.S. at 9–10).

This case presents the classic (and often close) question of whether an officer's use of force against a prisoner was, on one hand, a good-faith effort to maintain discipline or, on the other hand, malicious and sadistic. Starting with Defendant's use of a chemical agent, Plaintiff has testified under oath that Defendant continued to discharge a chemical agent while Plaintiff was restrained in handcuffs against the wall until he "begg[ed]" him to stop and began choking. ECF No. 26-4 at 20–24. Defendant admits to

15

using the chemical agent but says it was only until Plaintiff "complied with orders to submit to hand restraints." ECF No. 26-3 at 1. Plaintiff's sworn allegation is enough to raise a genuine issue of material fact precluding summary judgment. *Sears v. Roberts*, 922 F.3d 1199, 1209 (11th Cir. 2019); *see also Dimanche v. Brown*, No. 4:11-cv-533-WS-CAS, 2016 WL 5867057, at *12 (N.D. Fla. Sept. 6, 2016)*, report and recommendation adopted*, 2016 WL 5868083, at *1 (Oct. 6, 2016); *Kirkland v. Everglades Corr. Inst.*, No. 12-22302-CIV, 2014 WL 1333212, at *6 (S.D. Fla. Mar. 31, 2014); *Kornagay v. Burt*, No. 3:09-cv-281-LAC-EMT, 2011 WL 839496, at *18 (N.D. Fla. Feb. 8, 2011)*, report and recommendation adopted*, 2011 WL 855619, at *1 (Mar. 9, 2011).

Defendant claims, to the contrary, that "all" of the evidence in the summary judgment record shows his use of a chemical agent to subdue Plaintiff was not excessive, but he only points to a declaration by his colleague, Christopher Jordan. ECF No. 26 at 14. Jordan opines, based solely on his review of Defendant's "Report of Force Used Log," that Defendant discharged 43 grams of chemical agents over the course of four seconds and that such conduct "appears to be consistent with agency policy and rules which require that the use of force be limited to the

minimum amount of force necessary to quell the situation."  ECF No. 26-5 at 1–2.

Jordan's declaration does not satisfy Defendant's initial burden to show that a triable issue of fact does not exist.  Defendant does not argue there is a proper foundation and evidentiary basis to admit Jordan's opinions at trial.  *See Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) ("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form.").  And even if there were a foundation to admit Jordan's opinions, evidence regarding compliance with or violation of police department policies and procedures is rarely dispositive of the objective Fourth-Amendment inquiry.  *Landsman v. City of Vero Beach*, No. 13-14375-CIV, 2015 WL 10963709, at *3 (S.D. Fla. Oct. 28, 2015) (citing *Tanberg v. Sholtis*, 401 F.3d 1151, 1162 (10th Cir. 2005)).

Defendant otherwise offers a compelling argument that his suggested use of "only half of the chemical agents available to" him "in the short-span of approximately four seconds" was not unconstitutionally excessive, particularly in light of the reactionary circumstances of his encounter with Plaintiff.  ECF No. 26 at 15.  After all, federal courts "must … give a wide range of deference to prison officials acting to preserve discipline and

security, including when considering decisions made at the scene of a disturbance." *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007). But "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The Court, therefore, cannot grant Defendant summary judgment on that basis alone in view of Plaintiff's sworn statement that Defendant continued to spray his face even after he was restrained in handcuffs and compliant. ECF No. 26-4 at 20–24. The latter is evidence from which a reasonable jury could conclude Defendant acted maliciously and sadistically to cause harm.

Moreover, Plaintiff has stated under oath that Defendant joined another corrections officer in punching him after he was restrained in handcuffs and begging them to stop. ECF No. 12 at 6; ECF 26-3 at 23. Defendant does not mention employing on Plaintiff any amount of physical force tantamount to punching. ECF No. 26-1 at 1; ECF No. 26-2 at 1; ECF No. 26-3 at 1. If Plaintiff's statement is believed, this "gratuitous use of force on a handcuffed … and physically compliant prisoner constitutes a violation of the Eighth Amendment's prohibition on the use of excessive force." *Watson v. Edelen*, 76 F. Supp. 3d 1332, 1371 (N.D. Fla. 2015)

18

(citing *Wilkins*, 59 U.S. at 37); *see also Williams v. Rickman*, 759 F. App'x 849, 853 (11th Cir. 2019) ("[E]ven when an initial use of force against a prisoner is constitutionally permissible, continued force is excessive after the prisoner has complied and control has been restored."); *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002) ("[G]overnment officials may not use gratuitous force against a prisoner who has been already subdued.").  An officer's single punch to a prisoner who does not pose a danger can constitute excessive force.  *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008); *Nelms v. Hatcher*, No. 5:07-cv-62-RS-MD, 2009 WL 62649, at *10 (N.D. Fla. Jan. 7, 2009).

Defendant's remaining arguments suggesting Plaintiff cannot demonstrate a constitutional violation based on the alleged punching do not cut ice.  Defendant says that summary judgment is appropriate because Plaintiff "admitted in his post use-of-force written statement that it was another officer, not Defendant Grant[,] that allegedly punched him."  ECF No. 26 at 15 (citing ECF No. 26-3 at 3).  Plaintiff has since said otherwise, ECF No. 12 at 6; ECF 26-4 at 23, and, as such, "[i]t is the jury's task"—not the Court's—"to weigh conflicting evidence and inferences, and determine the credibility of witnesses."  *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1154–55 (11th Cir. 2002); *see also Rivera v. LeBron*, 824 F. App'x

19

838, 842 (11th Cir. 2020) (suggesting it is improper for district courts to disregard a plaintiff's factual allegations in a verified complaint that are arguably inconsistent with earlier assertions); *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003) ("Although McCormick's explanations may not credibly withstand cross-examination, weighing the contradictory statements along with the explanations for those contradictions are judgments of credibility.  Issues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment.").

Defendant also contends that Plaintiff "cannot testify to the allegation that Defendant" punched him "without committing perjury" because he testified at his deposition that he was "turned and placed with his face against a wall … to be placed in hand restraints."  ECF No. 26 at 15. Although summary judgment may be appropriate when one party's version of events is inherently incredible, *Perez v. Suszczynski*, 809 F.3d 1213, 1221 (11th Cir. 2016), this is not such a case because Defendant's argument rests on a misinterpretation of Plaintiff's deposition testimony. Plaintiff testified that he was placed against the wall when the punching began, ECF No. 26-4 at 23, but he did not say that he could not see who was punching him.  Indeed, although Plaintiff's response to the instant

motion is unsworn, he says just the opposite there. *See* ECF No. 37 at 5 ("Plaintiff never stated that he was placed with his face against the wall in order for him to be placed in hand restraints."). Plaintiff's trial testimony on this point would not contradict his deposition testimony, let alone be incredible as a matter of law or contrary to the laws of nature to warrant summary judgment.

Lastly, Defendant argues that he is entitled to summary judgment because there is no video or witness evidence to corroborate Plaintiff's sworn allegations that Defendant punched him. ECF No. 26 at 16. It is hornbook law that Plaintiff is not required to present such evidence to survive summary judgment; that is, his sworn testimony is enough to demonstrate a genuine issue of material fact unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law. *See Sears*, 922 F.3d at 1207 ("[W]e have long recognized that courts routinely and properly deny summary judgment on the basis of a party's sworn testimony."). Because lack of corroborating evidence is not a basis to apply those limited exceptions, Defendant's argument fails.

In sum, the summary judgment record on Plaintiff's Eighth Amendment claim presents "a classic swearing match, which is the stuff of which jury trials are made." *Feliciano v. City of Miami Beach*, 707 F.3d

1244, 1253 (11th Cir. 2013).  Namely, there is a genuine issue of material fact as to whether Defendant's use of force was excessive.

### C.   A reasonable jury could find that Plaintiff suffered more than a de minimis physical injury.

This leaves the question of whether Plaintiff suffered more than a de minimis physical injury at Defendant's hands, so as to overcome the PLRA's bar on compensatory damages for federal claims.  42 U.S.C. § 1997e(e).  A survey of the Eleventh Circuit's precedent "reveals no consensus for how to determine when a physical injury is greater than de minimis[,]" but the threshold is not significantly high.  *Thompson v. Smith*, 805 F. App'x 893, 904 (11th Cir. 2020).  Discomfort does not equate to physical injury.  *Dixon v. Toole*, 225 F. App'x 797, 799 (11th Cir. 2007).  The Court must keep in mind that the "essential purpose" of the PLRA is to "curtail frivolous and abusive prisoner litigation about the routine discomforts of confinement."  *Thompson*, 805 F. App'x at 901.

Plaintiff testified at his deposition that his eyes burned from the chemical agent (even after his decontamination shower), he had a swollen eye, his wrists hurt for three to four months, and his neck and back pain are recurring.  ECF No. 26-4 at 27–28, 32.  When tasked with considering the totality of his injuries, a reasonable jury could conclude they are more than de minimis because they go beyond the routine discomforts of

confinement.  *See Thompson*, 805 F. App'x at 904–05; *Ziesmer v. Hagen*, 785 F.3d 1233, 1238 (8th Cir. 2015); *Wilson v. Johnson*, No. 4:18-cv-310-RH-MJF, 2020 WL 3052530, at *19 (N.D. Fla. Mar. 31, 2020), *report and recommendation adopted*, 2020 WL 3050229, at *1 (June 8, 2020).

Defendant's reliance on DOC medical records concerning Plaintiff's injuries (or a suggested lack thereof), ECF No. 26 at 19–21, is not well-taken at this juncture.  *See Sears*, 922 F.3d at 1208 n.4 ("A reasonable jury could believe that Sears suffered more injuries than the nurse recorded[.]"); *Reid v. Sec'y, Fla. Dep't of Corr.*, 486 F. App'x 848, 852 (11th Cir. 2012) ("While it is true that Reid's medical records do not support the version of the facts he presents in his affidavit, all this means is that there is conflict in the evidence, which we must resolve at the summary judgment stage in Reid's favor.").

## IV.  CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that Defendant's Motion for Summary Judgment, ECF No. 26, should be **DENIED**.

**IN CHAMBERS** this 7th day of July 2021.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.